# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **MARC R. SLAVIN,** *et al.*, | * | |
| Plaintiffs/Counter-Defendants, | * | |
| v. | * | Civil Case No.: PWG-16-2511 |
| **IMPERIAL PARKING (U.S.), LLC,** | * | |
| Defendant/Counterclaimant. | * | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs/Counter-Defendants MarcParc Valet, Inc., and MarcParc, Inc. and their sole shareholder, Marc R. Slavin (collectively, "MarcParc"), entered into an Asset Purchase Agreement ("APA"), ECF No. 35-2, with Defendant Imperial Parking (U.S.), LLC ("Impark"), on March 10, 2015, under which MarcParc, a company that operated public parking lots and garages in Washington, D.C., Virginia, and Maryland, "sold substantially all of its assets" to Impark.[1] The APA set a price for the acquisition, but also provided for a downward adjustment under certain circumstances. It included an arbitration clause, APA § 6.8(b)(iii) ("Arbitration Clause"), under which the parties agreed that, if they disagreed about the amount of the adjustment and were unable to resolve their dispute, they would "submit the disputed matters to Grossberg Company . . . (the 'Independent Accountants'), to make a final determination of the calculation."

---

[1] The facts summarized in this Memorandum Opinion and Order are from the June 19, 2017 Memorandum Opinion and Order, ECF No. 63, unless otherwise noted.

The parties disputed the amount and could not resolve the dispute, so MarcParc submitted the dispute to Richard Hill of Grossberg Company ("Grossberg"). Impark made its required responsive submission to Grossberg by letter on January 27, 2016, and email one day later. Two hours after sending the email, Impark "became aware" that MarcParc had a prior relationship with Grossberg. Impark ceased participating in the arbitration and did not communicate further with Grossberg, although it did inform MarcParc by phone on February 9, 2016 that it "objected to Mr. Hill serving as the 'Independent Accountant.'" Grossberg entered a final award ("Arbitration Award") in favor of MarcParc on February 26, 2016.

MarcParc initiated this litigation to confirm the Arbitration Award on May 18, 2016, ECF No. 2, and then filed a Motion to Confirm Arbitration Award, ECF No. 35, as well as a Motion to Dismiss some of the counterclaims that Impark had filed against it, ECF No. 41. I found that Impark's challenge to the award was untimely and that *res judicata* barred three of its counterclaims. Accordingly, on June 19, 2017, I granted MarcParc's motions and entered judgment in MarcParc's favor on Count II of its Complaint, although I denied MarcParc's request that I enter a final judgment pursuant to Rule 54(b). June 19, 2017 Mem. Op. & Order, ECF No. 63.

Impark file a Motion to Reconsider an Interlocutory Order or, in the Alternative, to Amend or Make Additional Findings, ECF No. 72, which the parties have fully briefed, ECF Nos. 72-1, 73, 74. A hearing is not necessary. *See* Loc. R. 105.6. Because Impark has not shown a basis for reconsidering the June 19, 2017 Memorandum Opinion and Order, I will deny the motion.

**Procedural History**

The Arbitration Award issued in favor of MarcParc on February 26, 2016, and MarcParc filed this lawsuit to confirm the Arbitration Award on May 18, 2016; MarcParc also claimed breach of contract. ECF No. 2. Impark filed an answer on July 14, 2016, ECF No. 10, after which I entered a Scheduling Order, ECF No. 13. Impark then filed a counterclaim for breach of the APA (Count I), breach of a Transition Services Agreement (Count II), fraudulent inducement (Count III), breach of duty of good faith and fair dealing (Count IV), tortious interference with contractual relations and prospective economic advantage (Count V), and civil conspiracy (Count VI). Am. Countercl., ECF No. 52.

After the Scheduling Order issued and was revised once, ECF No. 19, MarcParc filed its Motion to Confirm Arbitration Award, ECF No. 35, and its Motion to Dismiss Count I of Defendant's Amended Counterclaim in part and to dismiss Counts III, IV, and VI in their entirety, ECF No. 41. Impark opposed MarcParc's Motion to Confirm Arbitration Award, formally seeking to vacate the award for the first time. ECF No. 39. Because MarcParc's motions, if successful, would not dispose of the case in its entirety, the parties proceeded with discovery.

At the parties' request, I revised the Scheduling Order again, extending the discovery deadline to April 28, 2017. ECF Nos. 56, 57, 58. On April 17, 2017, Impark informed the Court that it "expect[ed] that discovery [would] provide even additional support for its position that the arbitration award should be vacated," and it "believe[d] that the recent deposition of Marc Slavin yielded testimony that further supports its position that the arbitration award should be vacated." ECF No. 60. On the discovery deadline, the parties reported that there were outstanding depositions, culminating with depositions of their damages experts on the week of June 19, 2017,

and they sought an extension of discovery to June 26, 2017, ECF No. 61, which I granted, ECF No. 62.

On June 19, 2017, one week before discovery concluded, I found that Impark's challenge to the award was untimely, and accordingly I granted MarcParc's Motion to Confirm Arbitration Award and entered judgment in MarcParc's favor on Count II of its Complaint, although I denied MarcParc's request that I enter a final judgment pursuant to Rule 54(b). ECF No. 63. I dismissed Count I of Impark's Amended Counterclaim in part, based on Impark's concession that, if I granted MarcParc's Motion to Confirm Arbitration Award, Impark's first count should be dismissed in part. And I dismissed Counts III, IV, and VI of the Amended Counterclaim on *res judicata* grounds.

Impark promptly sought leave to file a motion for reconsideration. I held a conference call on July 13, 2017 with regard to the proposed motion, and I set page limits of fifteen pages for Impark's memorandum and MarcParc's opposition and seven pages for Impark's reply. ECF No. 69. Impark adhered to this page limit, but did so by "relyi[ng] on and incorporat[ing] its Opposition to the Motion to Confirm," *see* Def.'s Mem. 1 n.1, and using a 10-point font size in its 69 footnotes, in violation of this Court's Local Rules. *See* Loc. R. 102.2(b) ("Typed, printed, or written material shall appear only on the front side of any page in at least 12-point font size."). Additionally, Impark stated that, "in light of the Court's page limit, not every relevant fact is noted in this Motion, but is highlighted in the exhibits as the Court instructed at the July 13, 2017 Status Conference." Def.'s Mem. 1 n.1. The purpose of highlighting relevant portions of exhibits is to make it easier to locate cited material, not to include additional material. Indeed, in the context of a summary judgment motion, "[t]he court need consider only the cited materials," Fed. R. Civ. P. 56(c)(3), and I am not aware of a requirement that, in the context of a motion for

reconsideration, the Court must thumb through the exhibits (which in this case number 77 and total 887 page) looking for highlighted material and then determine its relevance to a party's various arguments. Accordingly, I have considered only the cited materials.[2]

## Standard of Review

Impark seeks relief "[p]ursuant to Fed. R. Civ. P. 54(b) and/or 52(b) . . . ." Def.'s Mem. 1.

### *Rule 54(b)*

Rule 54(b) governs motions for reconsideration of orders such as the June 19, 2017 Memorandum Opinion and Order "that adjudicate[] fewer than all the claims or the rights and liabilities of fewer than all the parties." Fed. R. Civ. P. 54(b). It provides that such an order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Id.*

The Fourth Circuit has not stated a standard for review of a Rule 54(b) motion, but it has said that, "generally at least, a review of an interlocutory order under Rule 54 is not subject to the restrictive standards of motions for reconsideration of final judgments under Rule 60." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir. 1991); *see also Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003). Nor is the standard for Rule 59(e) binding on review under Rule 54. *See Am. Canoe Ass'n*, 326 F.3d at

---

[2] If, during the briefing of its motion for reconsideration, Impark believed that it needed additional pages than the fifteen pages ordered (following a status call with counsel to discuss the briefing of the motion, ECF No. 69), it had a readily available and expeditious means to request an extension. It simply needed to follow the pre-motion conference procedure established by the Court (and previously followed by the parties) at the beginning of the case, ECF No. 9, and an expedited conference call would have been scheduled to discuss the request. Impark, however, did not do so. Instead, it *de facto* exceeded the page limit by incorporating wholesale its previous memorandum of law, disregarding the Court's Local Rules regarding footnote size, and packing the motion with 75 exhibits (nearly 900 pages), which included highlighted portions the significance of which it did not discuss in its memoranda.

514; *Cezair v. JPMorgan Chase Bank, N.A.*, No. DKC-13-2928, 2014 WL 4955535, at *1 (D. Md. Sept. 30, 2014). Nonetheless, "courts frequently look to these standards for guidance in considering such motions." *Cezair*, 2014 WL 4955535, at *1; *see also Peters v. City of Mt. Rainier*, No. GJH-14-955, 2014 WL 4855032, at *3 n.1 (D. Md. Sept. 29, 2014) (looking to Rule 60(b) standard); *Harper v. Anchor Packing. Co.*, No. GLR-12-460, 2014 WL 3828387, at *1 (D. Md. Aug. 1, 2014) (looking to Rule 59(e) standard); *Potter v. Potter*, 199 F.R.D. 550, 552 n.1 (D. Md. 2001) (applying Rule 59(e) standard). A Rule 59(e) motion "need not be granted unless the district court finds that there has been an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error [of law] or prevent manifest injustice." *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 411 (4th Cir. 2010); *see also Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) ("A Rule 59(e) motion may only be granted in three situations: '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.'" (citation omitted)). Rule 60(b) provides overlapping, but broader, bases for relief from a court order, including that there has been "mistake, inadvertence, surprise, . . . excusable neglect[,] . . . newly discovered evidence[,] . . . fraud . . . , misrepresentation, or misconduct"; that "the judgment is void" or "has been satisfied"; or "any other reason that justifies relief." Fed. R. Civ. P. 60(b).

In keeping with these standards, this Court has held that "[a] motion for reconsideration is appropriate to 'correct manifest errors of law or fact or to present newly discovered evidence,' or where there has been an intervening change in controlling law." *Potter*, 199 F.R.D. at 552 n.1 (citations omitted). "Although there may be many valid reasons to reconsider an order, 'a motion to reconsider is not a license to reargue the merits or present new evidence' that was

previously available to the movant." *Davidson v. Sarnova, Inc.*, No. JKB-17-1067, 2017 WL 5564654, at *2 (D. Md. Nov. 20, 2017) (quoting *Royal Ins. Co. of Am. v. Miles & Stockbridge, P.C.*, 142 F. Supp. 2d 676, 677 n.1 (D. Md. 2001) (citing *RGI, Inc. v. Unified Indus., Inc.*, 963 F.2d 658 (4th Cir. 1992))). It "is not a license for a losing party's attorney to get a second bite at the apple." *Potter*, 199 F.R.D. at 552–53 (quoting *Shields v. Shetler*, 120 F.R.D. 123, 126 (D. Co. 1988)). These "rules of constraint . . . make sense when a district court is asked to reconsider its own order" because "'[w]ere it otherwise, then there would be no conclusion to motions practice, each motion becoming nothing more than the latest installment in a potentially endless serial that would exhaust the resources of the parties and the court—not to mention its patience." *Pinney v. Nokia, Inc.*, 402 F.3d 430, 452–53 (4th Cir. 2005) (quoting *Potter*, 199 F.R.D. at 553).

## *Rule 52(b)*

Rule 52(b) provides that, "[o]n a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly." Fed. R. Civ. P. 52(b). "However, Rule 52 applies '[i]n an action tried on the facts without a jury or with an advisory jury.'" *O'Hara v. Comptroller of Md.*, No. TDC-14-4044, 2016 WL 2760337, at *1 (D. Md. May 12, 2016), *aff'd*, 670 F. App'x 777 (4th Cir. 2016), *cert. denied,* 138 S. Ct. 276 (2017) (quoting Fed. R. Civ. P. 52(a)(1); citing *St. Paul Mercury Ins. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997), in which the Fifth Circuit stated that Rule 52(b) "contemplates an underlying trial," and *Orem v. Rephann*, 523 F.3d 442, 451 n.2 (4th Cir. 2008), in which Judge Shedd stated in his concurrence that "Rule 52(b) is a trial rule that is not applicable in a summary judgment proceeding"). This matter has not been

7

tried; rather, I entered a partial judgment after I granted MarcParc's Motion to Confirm Arbitration Award. Accordingly, Rule 52(b) is inapplicable. *See id.*

I could, of course, construe Impark's Rule 52(b) motion as a Rule 59(e) motion, if doing so were in the interest of justice. *See* Fed. R. Civ. P. 1; *see also O'Hara*, 2016 WL 2760337, at *1. But, given that the standard for a Rule 59(e) motion informs my analysis of Impark's Rule 54(b) motion, while the Rule 54(b) motion is held to a less stringent standard, Impark would not prevail under Rule 59(e) if it does not prevail under Rule 54(b). Therefore, I will deny Impark's motion insofar as it seeks relief pursuant to Rule 52(b) and consider it only under Rule 54(b).

## Discussion

### *Newly Discovered Evidence*

Impark argues that the June 19, 2017 Memorandum Opinion and Order issued "without the benefit of discovery" and that "[t]he Court should reverse its earlier decision because there was no agreement to arbitrate and/or Impark was not a participant in the so-called arbitration proceeding." Def.'s Mem. 1. While the evidence Impark now offers is extensive—almost 900 pages—Impark has not shown that it constitutes "newly discovered evidence" for purposes of reconsidering an order.

> To proceed based on newly discovered evidence, the party moving for reconsideration must demonstrate that:
>
>> (1) the evidence is newly discovered *since the judgment was entered*; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried . . . .

*Coghill v. Bd. of Educ. of Prince George's Cty.*, No. GJH-14-2767, 2017 WL 2779624, at *2 (D. Md. June 23, 2017) (quoting *Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989)), *aff'd*

*sub nom. Coghill v. Bd. of Educ. for Prince George's Cty.*, No. 17-1765, 2017 WL 5664682 (4th Cir. Nov. 27, 2017) (emphasis added)).[3]

Here, Impark asserts that, in discovery, it obtained evidence that could affect my ruling. Def.'s Mem. 1. Certainly, MarcParc filed its motions and Impark filed its oppositions half a year before the conclusion of discovery. Yet, discovery concluded (save for depositions of damages experts) before the issuance of the Memorandum Opinion and Order that Impark asks me to reconsider. While Impark notified the Court two months before the close of discovery that it "expect[ed] that discovery [would] provide even additional support for its position that the arbitration award should be vacated," and that it "believe[d] that the recent deposition of Marc Slavin yielded testimony that further supports its position that the arbitration award should be vacated," Apr. 17, 2017 Ltr., Impark never asked to supplement its filings in opposition to MarcParc's motions. And now, it cannot establish that this evidence "is newly discovered *since the judgment was entered.*" *See Boryan*, 884 F.2d at 771 (emphasis added); *Coghill*, 2017 WL 2779624, at *2. Accordingly, it cannot form the basis for reconsideration of the June 19, 2017 Memorandum Opinion and Order. *See Boryan*, 884 F.2d at 771; *Coghill*, 2017 WL 2779624, at *2.

In any event, even if I were to consider this evidence, it is not "material" or "likely to produce a new outcome" on reconsideration. *See Boryan*, 884 F.2d at 771; *Coghill*, 2017 WL 2779624, at *2. The crux of Impark's argument is that the Arbitration Clause did not give rise to an agreement to arbitrate because it referenced Grossberg as the "Independent Accountants," and

---

[3] Impark was not unaware of this standard, however, as it quotes this language in its opening brief as the standard for a Rule 52(b) motion. *See* Def.'s Mem. 3 (quoting *Tawney v. AC & R Insulation Co.*, No. WDQ-13-1194, 2014 WL 3725926, at *1–2 (D. Md. July 24, 2014)). I note that, in *Tawney*, the Court used this language to describe the standard for a Rule 59 or 60 motion, not a Rule 52(b) motion. 2014 WL 3725926, at *1–2.

9

Grossberg was not actually independent, such that Impark could not have agreed to the firm as an arbitrator unless it gave informed consent. Def.'s Mem. 4–10. Impark asserts that the "new" evidence supports its position that Grossberg was not independent and that Impark could not have given informed consent to Grossberg's role when it entered into the purported agreement to arbitrate. *Id.* at 2, 5–7. Thus, the argument goes, because there was no agreement to arbitrate, there was no arbitration award, and therefore Impark had no time limitation for opposing enforcement of the purported award. *Id.* at 4–10.

Impark already set forth the argument that Grossberg was not independent and therefore Impark did not agree to arbitrate before this particular accounting firm in its opposition to MarcParc's Motion to Confirm Arbitration Award. Def.'s Opp'n to Confirmation 2 (arguing that "there was no agreement to arbitrate *before Grossberg*"). In granting MarcParc's motions, I accepted that, "[a]lthough MarcParc had identified Grossberg as an independent accountant when Impark asked it to identify one for purposes of dispute resolution, Grossberg had 'provided income tax and consulting services to MarcParc, Inc. for approximately eight years.'" June 19, 2017 Mem. Op. & Order 5 (quoting Engagement Ltr. 2, ECF No. 35-7). And, while I acknowledged MarcParc's position to the contrary, I stated that Impark was "unaware of the relationship." *Id.* Further, I discussed at length my finding that Impark clearly agreed to arbitrate, noting Impark's assertion that "Impark was not claiming that there was no agreement to arbitrate at all" *Id.* at 14 (quoting Def.'s Opp'n to Confirmation 14 n.11). I also observed its attempts prior to the litigation "to proceed under the arbitration agreement, asking MarcParc to resolve the dispute through a 'truly independent accountant.'" *Id.* (quoting Def.'s Opp'n to Confirmation 2); *see also id.* (quoting Def.'s Opp'n to Confirmation 7 ("Notably, Impark did not refuse to participate in any arbitration proceeding whatsoever; rather, it offered to participate in

an arbitration proceeding before a truly independent accountant."); citing Def.'s Opp'n to Confirmation 8–9 (reiterating its willingness to arbitrate)). And, I noted that, in its brief, "Impark repeatedly ask[ed] the Court to 'compel the parties to submit their dispute regarding the "Holdback Amount" to a truly "Independent Accountant."'" *Id.* (quoting Def.'s Opp'n to Confirmation 1; citing *id.* at 2, 3). I concluded that "Impark cannot have it both ways, seeking arbitration pursuant to the parties' agreement while denying that same agreement," and that, "[o]n these facts, Impark cannot argue credibly that there was no arbitration agreement." *Id.*

Thus, to the extent that Impark believes that Grossberg's conflict of interest and Impark's unawareness of it when the parties entered into the APA should have informed my analysis, I accepted these facts (but rejected Impark's argument that they precluded enforcement of the arbitration award). Therefore, additional evidence of the conflict or Impark's unawareness is not "material" and would not affect my conclusion. *See Boryan*, 884 F.2d at 771; *Coghill*, 2017 WL 2779624, at *2. Moreover, neither fact was material to my conclusion that Impark agreed to arbitrate, which I based on Impark's own repeated assertions to that effect, and for that reason, also, the "newly discovered" evidence would not affect my conclusion. *See Boryan*, 884 F.2d at 771; *Coghill*, 2017 WL 2779624, at *2. Impark's attempt to take a second turn at bat and reiterate its arguments in opposition to MarcParc's earlier motions is not proper on a motion for reconsideration. *See Potter*, 199 F.R.D. at 552–53.

### *Agreement to Arbitrate*

Impark now changes its stance and offers the new argument that there cannot be *any* agreement between the parties to arbitrate, because the Arbitration Clause required an "Independent Accountant" and specifically designated Grossberg as that accountant. Def.'s Mem. 4. But, Impark argues, since Grossberg was not independent, there was no arbitration

agreement because the independence requirement could not be severed from the arbitration agreement. *Id.* In its view, "[t]he Court's refusal to review the validity of the underlying arbitration agreement is contrary to § 2." *Id.* at 9. But, Impark does not state its basis for reconsideration on this ground. The "newly discovered" evidence is not material in this regard either, because, as discussed, I accepted (for purposes of the cross-motions analysis) that Grossberg, which was named in the Arbitration Clause, had a conflict of interest of which Impark was unaware when it entered into the APA. Perhaps it is Impark's position that it was clear error of law to accept its previous insistence that there was an agreement to arbitrate with an accounting firm that was truly independent (that is, a firm other than Grossberg). Or perhaps Impark believes that it is manifestly unjust to find that the Arbitration Clause is valid, even though it previously sought arbitration under that very same clause. But this was not a clear error of law, and manifest injustice will not result from not reconsidering my previous conclusion that the parties entered into an agreement to arbitrate.

Impark relies on the APA's severability provision to argue that "even if part of a provision is deemed invalid and unenforceable, the entirety of the invalid provision must be severed." Def.'s Mem. 8. In Impark's view, "[t]his is consistent with applicable law." *Id.* Impark cites *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 83 (D.C. Cir. 2005) (applying District of Columbia law), and *Bodine v. Cook's Pest Control Inc.*, 830 F.3d 1320, 1325 (11th Cir. 2016) (applying Alabama law).[4]

The APA severability clause provides:

> Each provision of this Agreement is declared to be separate and distinct and to be severable from all other such separate and distinct provisions. If any provision in this Agreement is determined to be invalid, illegal or unenforceable in whole or in

---

[4] Alabama law, like District of Columbia law, favors severability. *See Bodine*, 830 F.3d at 1328 & n.5 (regarding Alabama law); *Booker*, 413 F.3d at 107 (regarding District of Columbia law).

> part, it shall not be deemed to affect or impair the enforceability or validity of any other provision of this agreement or any part thereof, unless in either case as a result of such determination this agreement would fail in its essential purpose.

APA § 26.1.

"When an arbitration agreement contains invalid terms but the overarching contract has a severability clause, the FAA requires that we turn to state law to determine whether the contract's severability clause may be used to remove the offending terms in the arbitration agreement." *Andresen v. IntePros Fed., Inc.*, 240 F. Supp. 3d 143, 162 (D.D.C. 2017) (quoting *Bodine v. Cook's Pest Control Inc.*, 830 F.3d 1320, 1325 (11th Cir. 2016)). Pursuant to the APA, District of Columbia law applies. APA § 24.1. Under District of Columbia law, if a contract has a "severability clause [that] is enforceable under the relevant state law, 'any invalid provisions in the arbitration agreement are severable.'" *Id.* (quoting *Bodine*, 830 F.3d at 1325 (internal quotation marks and alteration omitted)).

Moreover, "D.C. contract law . . . permits the severance of unenforceable contract terms." *Ruiz v. Millennium Square Residential Ass'n*, 156 F. Supp. 3d 176, 183 (D.D.C. 2016) (citing *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 83 (D.C. Cir. 2005)). Thus, "[i]f a contract *or term* thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or *may enforce the remainder of the contract without the unconscionable term*, or may so limit the application of any unconscionable term as to avoid any unconscionable result." *Id.* (quoting *Kenyon Ltd. P'ship v. 1372 Kenyon St. Nw. Tenants' Ass'n*, 979 A.2d 1176, 1186 (D.C. 2009) (quoting Restatement (Second) of Contracts § 208) (emphasis added)). Therefore, the APA could be enforced without the reference to Grossberg under District of Columbia law. *See id.* And, the APA explicitly provides that a provision may be "determined to be invalid, illegal or unenforceable . . . *in part*," implicitly stating that a provision could be valid, legal, and enforceable in part, *see* APA § 26.1. It does not, as Impark contends, provide that "even if part

of a provision is deemed invalid and unenforceable, the entirety of the invalid provision must be severed." *See* Def.'s Mem. 8.

As for the cases Impark cites, in *Booker*, the District of Columbia Circuit considered whether an arbitration clause had to be stricken in its entirety, or whether the court could "simply sever offending provisions." 413 F.3d at 84. It noted a circuit split, but observed:

> The differing results may well reflect not so much a split among the circuits as variety among different arbitration agreements. Decisions striking an arbitration clause entirely often involved agreements without a severability clause, or agreements that did not contain merely one readily severable illegal provision, but were instead pervasively infected with illegality. Decisions severing an illegal provision and compelling arbitration, on the other hand, typically considered agreements with a severability clause and discrete unenforceable provisions.

*Id.* (internal citations omitted). Notably, the court did not use the word "provision" as a synonym to "clause," but rather to refer to a term within a clause. *See id.* The *Booker* Court did not adopt a bright-line rule with regard to whether provisions may be severed from an arbitration clause. Rather, it considered these factors and the facts before it, namely that "the agreement contained a severability clause" and "Booker identifie[d] only one discrete illegal provision in the agreement." *Id.* The court concluded that "severing the punitive damages bar and enforcing the arbitration clause was proper." *Id.*

*Bodine*, 830 F.3d 1320, an Eleventh Circuit opinion applying Alabama law, is not controlling authority. Moreover, the court applied Alabama law "to determine whether the invalid *terms* from the arbitration agreement could be severed and the remainder enforced" and concluded that "the severability clause in the Contract could be used to 'surgically lance the unlawful *portions* of the arbitration clause.'" *Id*. at 1328. (emphasis added). Thus, neither case supports Impark's position that a contractual clause that is unenforceable in part must be stricken entirely. *See id.*; *Booker*, 413 F.3d at 84. Accordingly, the reference to Grossberg can be stricken, leaving the remainder of the Arbitration Clause intact. Therefore, it was not clear error

14

of law to conclude that there was an agreement to arbitrate, and there is no manifest injustice from not reconsidering that conclusion.

### *Hill's Opinion*

Impark argues that the Arbitration Clause "is not an enforceable agreement to arbitrate" because Hill, an accountant at Grossberg, testified that "the arbitration provision in the APA was a mere 'contingency.'" Def.'s Mem. 10. Obviously, Hill's legal conclusions (which MarcParc argues were quoted out of context) are not admissible evidence. *See JFJ Toys, Inc. v. Sears Holdings Corp.*, 237 F. Supp. 3d 311, 324 (D. Md. 2017) ("[E]xpert opinions that merely recite 'a legal standard and draw[ ] a legal conclusion by applying law to the facts is generally inadmissible.'" (quoting *United States v. McIver*, 470 F.3d 550, 561–62 (4th Cir. 2006))); *see also United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002); Fed. R. Evid. 702. Accordingly, even if Hill's testimony about the enforceability of the Arbitration Clause were newly discovered evidence, it is not material and will not affect the outcome of the case because it is inadmissible. *See Boryan*, 884 F.2d at 771; *Coghill*, 2017 WL 2779624, at *2.

### *Party to the Arbitration*

Impark also repeats its argument that it was not a party to the arbitration and therefore the Arbitration Award cannot be enforced against it. Def.'s Mem. 10–13. I already addressed this argument in the June 19, 2017 Memorandum Opinion and Order, noting Impark's temporally brief participation in the arbitration (but not so evanescent that it was unable to file "a several hundred page submission to Grossberg in connection with the arbitration," as MarcParc observes. Pl.'s Opp'n 9), which negates its argument that it was not a participant. June 19, 2017 Mem. Op. & Order 17–18. Once again, Impark's reiteration of argument it already presented in opposition to MarcParc's earlier motions is not proper on a motion for reconsideration, as it

constitutes an effort to reargue a previously made position that was rejected by the Court. *See Potter*, 199 F.R.D. at 552–53. Therefore, Impark has not provided a basis for reconsidering this conclusion.

### *Public Policy*

Finally, Impark contends that "enforcing the Arbitration Award is against public policy," which "favor[s] arbitration as a reliable, speedy, inexpensive process to resolve disputes, and one that avoids litigation." Def.'s Mem. 14 (capitalization altered). It insists:

> [I]f the Court were to rule that a party cannot challenge the enforceability of the agreement to arbitrate after an arbitration award has been issued, it would empower a party and its hand-picked arbitrator to proceed under an unenforceable agreement to arbitrate and do precisely what MarcParc did here –instead of filing a motion to compel arbitration as the FAA provides in § 4 to "enforce" the purported agreement to arbitrate, conduct a one-sided arbitration where the opponent (i.e., Impark) refuses to participate because the opponent has not agreed to the arbitration in light of numerous undisclosed conflicts of interest, and, by "completing" the arbitration, eliminate the other party's contractual defenses to challenge the agreement to arbitrate under § 2 of the FAA.

*Id*. at 14–15. I agree that a party must have the ability to challenge an arbitration award after it issues. But a party *does* have that ability, provided it acts within 90 days, as the FAA requires. Indeed, a 90-day period of limitations helps "to secure 'streamlined proceedings and expeditious results," some of the "benefits of arbitration [that] are widely recognized." *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 936 (4th Cir. 1999) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 633 (1985)). Impark had the ability to challenge the arbitration award but chose not to do so within the time allowed by the FAA. This does not violate public policy. To the contrary, given the purpose underlying arbitration as an expeditious means to resolve disputes, allowing Impark to disregard the 90-day limit and belatedly challenge the award would contravene public policy. Thus, contrary to Impark's assertion, my conclusion

that Impark cannot prevail on a motion to vacate after those 90 days have passed accords with public policy. *See id.*

# ORDER

Accordingly, it is, this 9th day of January, 2018, by the United States District Court for the District of Maryland, hereby ORDERED that Impark's Motion to Reconsider an Interlocutory Order or, in the Alternative, to Amend or Make Additional Findings, ECF No. 72, IS DENIED. With respect to the remaining claims in this case, I will hold a conference call to discuss whether either party still plans to file a summary judgment motion and, if so, to set a briefing schedule.

/S/
Paul W. Grimm
United States District Judge

lyb